JUDGE WOOD
DELIVERED THE OPINION OP THE COURT:
The appellants were owners, or part owners, of the steamboat Diamond, and common carriers betwixt the ports of Louisville, in Kentucky, and Nashville, Tennessee. This action was commenced in the circuit court by the appellees, to recover of defendants the value of certain roots and cuttings of grapes and other articles contained in three boxes, alleged to have been shipped by Watkins & Owsley, at Louisville, on board the steamer Diamond, on the 27th day of December, 1856, to be delivered to Seymore, Fanning & Co., in Nashville.
The bill of lading, executed in behalf of the boat for the three boxes, was exhibited with the petition.
Appellees claimed that they were the owners of said boxes and their contents, and alleged that the boxes had never been delivered by appellants, as they were bound by their contract to deliver them.
It was alleged that the articles so delivered to the defendants, and which they undertook to carry, were of the value of two hundred and fifty dollars.
*560 The defendants filed an answer, by which they put in issue every material allegation contained in the petition; and alleged that in a reasonable time, and in compliance with their contract, they did deliver said three boxes of merchandise, at the port of Nashville, to the said Seymore, Fanning & Co., and that they, the said Seymore, Fanning & Co., paid the freight and charges on the same.
Afterwards, in the progress of the cause, the defendants waived all of their answer except that part in which was alleged the delivery of the boxes of merchandise, in Compliance with their contract.
In this state of the pleadings the parties went to trial, and a verdict and judgment for plaintiffs for two hundred and twenty-five dollars were the result, and from that judgment the defendants appealed.
Upon the appeal two matters are relied upon for error.
First, there was no evidence offered to the jury showing, or tending to show, the value of the freight sued for; and although the value, as alleged, was not controverted by the answer, it was not thereby admitted.
By the Civil Code, (see. 158,) it is provided that “allegations of value, or amount of damage, shall not be considered as true by the failure to controvert them.”
Notwithstanding the whole answer had been waived, except that part which related to the delivciy, and the allegation of value made in the petition stood uncontroverted, it could not, according to this provision of the Code, be considered as true, but ought to have been proved. No judgment could be rendered for the plaintiffs for the value of the merchandise, unless proof of that value were given to the jury. (Daniel vs. Judy, 14 B. Mon., 393-5; Clark, &c., vs. Seaton, 18 B. Mon., 229.)
In this matter there was error to the prejudice of the substantial lights of the appellants.
It is further insisted in behalf of the appellants, that the circuit court erred in the instruction given to the jury.
At the trial appellants proved that on the morning- of the second day of January, and within a reasonable time after the shipment at Louisville, they landed the three boxes aforesaid *561 on the wharf at Nashville ; and that on the third or fourth day of the same month the consignees were informed, by the clerk of Mr. Harrison, the agent of the boat, when he collected the freight bill, that their freight was delivered on the wharf by the steamboat Diamond; and the clerk says that he had seen the three boxes there, that is, upon the wharf, and that the freight bill was paid by the consignees.
The defendants also introduced evidence conducing to prove that, by a well known and uniform custom prevailing at Nashville, steamboats deliver freight by putting it on the wharf, and exhibiting in some public paid of the boat a manifest of the cargo. That freight thus placed upon the wharf was hauled away by the consignees, or their boss draymen, without any special notice — the consignees and their draymen themselves taking notice of the arrival of boats, and of freight for them, if any; and that in this particular instance the freight had been delivered in accordance with this custom.
Notwithstanding this evidence, the court instructed the jury peremptorily “ that there ivas no evidence of the delivery of the freight, and that they must find for the plaintiffs.”
It cannot be denied that, in the absence of any custom of such character as would vary the rule, and of any special contract between the parties, the carrier is bound either to make a personal delivery of the goods to the consignee, or, in the case of a carrier by water, to land them at the usual wharf or proper place of landing, and give due and reasonable notice thereof to the consignee.
But may not the manner of delivering the goods, and consequently the period at which the responsibility of the carrier will cease, in some measure, at least, depend upon, and be governed by, the custom of particular places, and the usage of particular trades, or upon a special contract between the parties?
It seems to the court, if there is any special contract between the parties, or any local custom, of usage of trade, on the subject, that ought to govern. The former would be an express, and the latter an implied, term of the contract.
*562 Prima facie, there must be actual delivery, or, in the case of a carrier by water, a landing at the wharf, or usual landing place, with due and reasonable notice to the consignee of the arrival of the goods. But this rule may be varied by contract, or affected by a well-established, reasonable, and generally known custom and usage.
To make such a custom admissible it must be of such age, such uniformity of observance, such certainty and fixedness of character, and of such notoriety, that a jury would feel clear in saying that it was known to the party who is sought to be affected by it; and it must be a reasonable one.
We can imagine no injury which would result to any one from admitting evidence of such a custom as this.
This has been long ago and often the subject of adjudication. Some contrariety of opinion has existed upon the question. Now, however, the doctrine seems to be settled as we have stated it above. (Story on Bailments, sec. 543 ; Gibson vs. Culver, 17 Wendell, 305; Farmers’ and Mechanics’ Bank vs. Champlain Transportation Co., 16 Vermont, 52; Same vs. Same, 18 Vermont Rep., 131; Same vs. Same, 23 Ib., 186; Cope vs. Cordova, 1 Rawle, 203; Angell on Carriers, secs. 300, 302, et passim.)
We do not decide that such a custom, as we have said would be admissible, was proved in this particular case. But we think the court erred in taking the question entirely from the jury, by the peremptory instruction which was given.
The court should have instructed the jury precisely as to the character of custom which would have been available to the defendants, and then have left the jury to find whether or not such custom were proved. The facts conduced to show the existence of the custom upon which the defendants relied, and ought not to have been withdrawn altogether from the jury.
What the verdict would have been we cannot conjecture, nor do we intimate any opinion as to what it ought to have been.
For the errors aforesaid, the judgment of the circuit court is reversed, and the cause remanded, with directions to that court to set aside the verdict of the jury, and award a new trial, and for further proceedings in conformity to this opinion.