## NATHANIEL L. HOWE *vs.* SARAH F. JOHNSON.

Worcester. September 28, 1920. — October 16, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Deceit. Railroad,* Location, Grade crossing proceedings. *Practice, Civil,* Finding by judge, Exceptions. *Estoppel. Evidence,* Competency, Opinion: expert. *Agency,* Scope of authority.

A location of a railroad made in 1867 included the northerly portion of a certain lot of land. By a decision and decree of a commission for the abolition of a grade crossing, which was confirmed by the Superior Court, the base line of the location of the railroad was moved northerly a distance greater than that between the southerly line of the original location and the northerly line of the lot. The decision also contained, in a description of a portion of the lot which was taken for slopes, references to the southerly line of the original location of the railroad as coinciding with the northerly line of the lot. There were no express words in the decision, plan or decree of the commission discontinuing the original location of the railroad and no statement of the width of any new location. After the confirmation of the decree, the owner of the lot, representing it to be free from any incumbrance, conveyed it to one, who afterwards, contending that the land still was subject to the easement of the original location, brought against the grantor an action of deceit for damages resulting from the alleged false representation. *Held,* that it could not be implied or inferred from the provisions of the decision, plan and decree of the commission that the original location of the railroad was discontinued.

The action above described was heard by a judge without a jury, who found that the railroad had not abandoned the original location on the land in question. Upon an exception by the defendant, the record did not set forth all the evidence. *Held,* that no error of law appeared in the finding.

The mere production, by the railroad corporation at the hearing before the commission above described, of a plan which did not show the easement of the original location, could not be ruled as matter of law, at the trial of the action of tort above described, to create an estoppel of the railroad corporation from claiming the existence of such easement, where it did not appear that the owner of the land at the time of the hearings before the commission, the defendant in the action of tort, was induced by such conduct of the railroad corporation to do what otherwise he would not have done or to refrain from doing what he otherwise would have done, or that that corporation knew or had reasonable cause to believe that such owner would so act or refrain from acting to his harm.

An exception to the exclusion of a question asked of an expert witness at a trial will not be sustained where it appears that the information sought by the question was given in answer to a later question asked by the judge.

It is not reversible error to exclude at a trial a question of an expert as to his interpretation of a boundary shown on a plan in evidence.

Where, at the trial of an action for deceit, it appears that false representations, which were relied on by the plaintiff as the foundation of the action, were not made by the defendant but were made by his agent acting within the scope of his authority, it is not error to refuse a request for a ruling, "The plaintiff cannot recover, unless material statements made by the defendant were untrue, and known by the defendant to be untrue, unless such statements were made as of her own knowledge;" as the defendant would be bound by the agent's fraud if the agent made the representations knowing them to be false, or if he made them as of his own knowledge, although the defendant did not specifically authorize them and had no knowledge that they were made.

TORT for damages resulting from alleged misrepresentations by the defendant, to the effect that land on High Street and Water Street in Clinton, conveyed by her to the plaintiff in 1913, was free from incumbrances, whereas, the plaintiff alleged, it was subject to an easement, created by the location of the Agricultural Branch Railroad in 1867 and still existing for the benefit of that corporation's successor, the Old Colony Railroad, whose lessee was the New York, New Haven, and Hartford Railroad Company. Writ dated March 25, 1915.

In the Superior Court, the action was heard by *Aiken,* C. J., without a jury, upon questions relating to liability. It appeared that the location of the Agricultural Branch Railroad in 1867 included a quadrilateral tract of land in the northeasterly corner of the lot afterwards conveyed by the defendant to the plaintiff. In proceedings begun by the selectmen of the town of Clinton on November 22, 1904, for the abolition of a certain grade crossing, a decree of the commission, filed in May, 1912, and confirmed by the Superior Court, moved the base line of the location of the Old Colony Railroad (the successor of the Agricultural Branch Railroad), northerly. There was no specific discontinuance of the old location.

The defendant's main contention was that the "location of a railroad, legally speaking, is five rods in width, and, unless the same is limited in some lawful manner, that is just as well defined as though it were laid out by metes and bounds on the side lines," referring to St. 1906, c. 463, Part II, § 73, which reads: "A railroad corporation may lay out its railroad not more than five rods wide; and for the purpose of cuttings or embankments or of procuring stone and gravel and for depot and station purposes may purchase or otherwise take, in the manner hereinafter provided,

as much land as may be necessary for the proper construction and security of its railroad." If the mere changing of the base line of the location of the Old Colony Railroad made a new location restricted to five rods in width and discontinued the old location *pro tanto*, the lot conveyed by the defendant to the plaintiff was freed from the easement and the defendant was not liable.

The defendant also contended that, by reason of the language of a description, in the decision and decree of the commissioners, of a portion of the lot in question taken for slopes, which seemed to place the southerly boundary of the original location of the Agricultural Branch Railroad at the northerly bound of the land conveyed by the defendant to the plaintiff, it must be inferred that that land was entirely outside of the location of the railroad and free from the easement.

The plaintiff replied that there was no specific discontinuance of the old location and nothing from which such discontinuance could be inferred or implied.

One Frederick W. Bateman, who, it was agreed, was an expert engineer and qualified to express an opinion in regard to plans and plan readings, if such opinions were competent, was asked, relative to a plan which had been produced by the New York, New Haven, and Hartford Railroad Company at the hearings before the commission for the abolition of the grade crossing, "Now, Mr. Bateman, reading that plan, does the location of the railroad encroach upon the Johnson lot?" The question was excluded and the defendant excepted. Later, in answer to a question by the court, the witness made the statement described in the opinion.

The same witness was asked, relative to the side lines of the Old Colony Railroad, "whether or not that plan of itself shows the boundary of the Old Colony Railroad property delineated on the plan itself;" and answered that "there was on the plan no specific statement that any line represented the boundary of any especial, of any particular ownership," but that the whole effect and meaning of the plan was that it did indicate the boundaries of different parcels of property and of different owners and that he reached that conclusion from the general indication and appearance of the plan that certain lines were intended and did show

lines of ownership and parcels of land. This answer was admitted subject to an exception by the plaintiff.

The witness then was asked "to point out where those boundary lines are upon the map just north of the Johnson lot;" and, the court interposing, "Mr. Witness, you point out on that plan what lines indicate, in your opinion, the location of the Old Colony Railroad," he replied, "If your Honor please, I am uncertain as to the exact meaning of the word 'location.' If it means the location as filed with the clerk of courts, it is one thing. If it means the boundary of the railroad land as shown on this plan, it is another thing." He then was asked, "That is what I inquired about. What is shown on this plan?" His reply described the northern boundary of the lot conveyed by the defendant to the plaintiff. The bill of exceptions stated: "Thereupon on further objections by the plaintiff the answer was excluded and the defendant duly excepted."

Other material evidence is described in the opinion. At the close of the evidence, the defendant asked for the following rulings:

"1. Upon all the evidence the plaintiff is not entitled to recover.

"2. The Old Colony Railroad having succeeded to the rights of the Agricultural Branch Railroad, and the railroad location, as established by the decree of the grade crossing commission in the town of Clinton not including any part of the Johnson land, there are now no rights in the Old Colony Railroad, by the way of easement or otherwise, in the Johnson land, and the plaintiff has a good title to the land" conveyed by the defendant to the plaintiff.

"3. The plaintiff has a good title to the land which he claims was shown to him and bargained to him by the defendant.

"4. The plaintiff cannot recover, unless material statements made by the defendant were untrue, and known by the defendant to be untrue, unless such statements were made as of her own knowledge."

"6. The Old Colony Railroad, the successor of the Agricultural Branch Railroad in title, having produced at the hearings on the petition for the abolition of grade crossings at Clinton a plan which showed the Johnson land to extend one hundred and four feet on High Street, and showed their own land or location as not extending farther south than that point, and the decree

thereon including such plan, is estopped from making any effectual claim beyond that point."

The foregoing rulings were refused. Material findings and rulings upon evidence by the Chief Justice of the Superior Court are described in the opinion. He found for the plaintiff on questions relating to liability and referred the case to an assessor on the question of damages; and the plaintiff's damages were assessed in the sum of $532.30 and interest. The defendant alleged exceptions.

The entire evidence was not reported, the defendant relying solely upon the decision, plans and decree of the Clinton grade crossing commission as the basis for her requests numbered one, two and three. That decree was not printed with the record. The bill of exceptions contained the following statement: "This decision, the plans filed therewith, and the decree therein may be referred to, either party calling the court's attention to such part of either as he deems material to the issues raised herein."

*R. B. Dodge*, for the defendant.

*J. A. Stiles*, for the plaintiff.

CARROLL, J. The defendant by warranty deed conveyed a tract of land in Clinton to the plaintiff. The description included a quadrilateral area at the northwest corner which was subject to an easement created by the location of the Agricultural Branch Railroad filed in 1867. The action is in tort, the plaintiff contending that he believed he was acquiring a good title to the entire tract, free from any incumbrance, and was induced to make the purchase by reason of the false representations of fact made by the authority of the defendant. In the Superior Court it was found that the plaintiff could recover for the failure to give him an unincumbered title, and damages were awarded. The name of the Agricultural Branch Railroad was changed to Boston, Clinton and Fitchburg Railroad Company, St. 1867, c. 153, § 1, and the latter consolidated with the Old Colony Railroad Company, St. 1882, c. 80, and subsequently leased to the New York, New Haven, and Hartford Railroad Company.

In December, 1912, a decree was entered confirming the decision of commissioners appointed to abolish certain grade crossings in the town of Clinton, and in January, 1913, the lot was conveyed and the deed delivered to the plaintiff. The defendant asked the court to rule that the plaintiff could not recover; that

the plaintiff had a good title to the land conveyed; that the Old Colony Railroad had no rights by way of easement or otherwise in the land; and that the location of the railroad as established by decree of the grade crossing commission did not include any part of the tract in question. These requests were refused. The record recites that the defendant based these requests solely on the decision, plans and decree of the grade crossing commission. It is further stated in the record that there are no express words in the decision, plan or decree discontinuing the location of the Agricultural Branch Railroad and no statement of the width of any new location. The entire evidence is not reported.

The location of the Agricultural Branch Railroad established in 1867 was not expressly changed by the decree of the commission, and it cannot be said that such a change is to be implied. The base line of the Old Colony Railroad was changed, and this is fully described, but the report does not attempt to decide that the old location should be changed or discontinued, and it does not describe a substitute location. St. 1907, c. 233, relating to the abolition of streets and railroad crossings in Clinton, was passed after the commissioners were appointed, and thereafter they acted under this statute as well as under the provisions of the general law. By R. L. c. 111, § 152, if the commission decided that "the location of the railroad or of the public or private way shall be changed, the decree of the court confirming such decision shall constitute a taking of the specified land or other property." This statute clearly contemplates that the proposed changes should be described, and that the location if changed or discontinued should be specified, and not left to mere implication. It was said in *Mayor & Aldermen of Newton, petitioner,* 172 Mass. 5, 7, speaking of St. 1890, c. 428, providing for the abolition of certain grade crossings in Newton: "Except so far as is necessary to accomplish the proposed abolition, the existing conditions are, for aught that appears, to continue substantially as before. If the proposed abolition cannot be accomplished except by discontinuing an existing way and building a new way, or by relocating the railroad, that may be done. But this does not alter the fact that the statute contemplates a continuance of existing conditions, subject to such changes in them as may be required to accomplish the abolition of crossings at grade." The principle

here stated is applicable to the case at bar. The decision does not show that it was necessary to change the existing location in order to accomplish the change in the grade crossings, and the existing conditions were to remain as they were, subject only to such changes as were set out in the decision, and as no specific change in the location was ordered as required by statute, the location continued as before. "It is at least doubtful whether under this requirement a discontinuance [of a public way] could be found to have been made by implication. Certainly, when the statute requires specification not only of any such discontinuance, but also of the grade which is to be established, it would be yet more difficult to infer one of these requisites from a declaration of the other." *Bliss* v. *Attleborough,* 200 Mass. 227, 230, 231.

Even if the old location could be discontinued by implication, and a new one substituted, we find nothing in the decision which warrants this inference. No new location was established; the only change in this respect was the making of a new base line, and it cannot be inferred from this that the old location was extinguished. In describing the land taken for slopes, the tract in question is referred to and its boundaries given, and from these boundaries as well as from the plans filed with the report, the defendant contends that the lot is shown to be outside of the railroad location and free from the easement. We do not think it can be implied from this description of the land taken for slopes that the established location of the railroad was discontinued or the easement over the land extinguished.

The judge found that the title of the railroad company to the quadrilateral tract was not abandoned. Abandonment is usually a question of fact, *Willets* v. *Langhaar,* 212 Mass. 573, and there was no error of law in this finding.

The sixth request was refused properly. The mere production of the plan by the Old Colony Railroad at the hearing before the commission, showing that the land conveyed extended one hundred and four feet on High Street, did not work an estoppel against the railroad company. There was no evidence that the defendant was induced by the conduct of the railroad company to do what she otherwise would not have done or to abstain from doing what she would have done, nor that the company knew or had reasonable cause to know that the defendant would so act or refrain from

acting to her harm. *E. V. Harman & Co.* v. *William Filene's Sons Co.* 232 Mass. 52.

The defendant was not harmed by the exclusion of the question put to the witness Bateman. In reply to a question by the court he stated that "scaling down" forty-one and one half feet from the new base line, the lot in question was not involved. This in effect was an answer to the question excluded. Nor was there error in excluding the answer of the witness as to the boundary of the railroad land as shown by the plan. The plan was in evidence and it was not reversible error of law to exclude the interpretation placed on it by the witness. *Boston & Albany Railroad* v. *Reardon,* 226 Mass. 286, 292.

The defendant made this request: "The plaintiff cannot recover, unless material statements made by the defendant were untrue, and known by the defendant to be untrue, unless such statements were made as of her own knowledge." The plaintiff does not seek to recover for breach of the covenants in the deed. The action sounds in deceit and the recovery was on this ground; and if the false representations were made by the defendant, she was entitled to this request and it should have been given. *Tucker* v. *White,* 125 Mass. 344. *Kerr* v. *Shurtleff,* 218 Mass. 167, 171. *Bates* v. *Cashman,* 230 Mass. 167.

But the record shows that the misrepresentations upon which the plaintiff relied were made with the authority of the defendant and there is no statement that any of the false representations were made by the defendant. We interpret this finding to mean that the misrepresentation was made by an agent or agents of the defendant and not by the defendant herself. If the false statements were made by an agent of the defendant who was authorized to make the sale, she was bound by his fraud if he made the statements knowing them to be false, or if he made them as of his own knowledge, although the defendant did not specifically authorize them and had no knowledge that they were made. *Haskell* v. *Starbird,* 152 Mass. 117. For this reason it was not error to refuse this request.

We discover no error of law in the findings or rulings made, and we cannot say that as matter of law the land conveyed was not subject to the easement.

*Exceptions overruled.*